[Crim. No. 3027. Second Appellate District, Division One.—February 16, 1938.]

In the Matter of the Application of EDNA ELLIS for a Writ of Habeas Corpus.

S. S. Hahn and W. O. Graf for Petitioner.

Ray L. Chesebro, City Attorney, Newton J. Kendall, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Respondent.

YORK, P. J.—The petition filed herein for a writ of *habeas corpus* would not have been granted had the true facts been set forth therein. However, there has since been filed a stipulation which corrects the misstatements contained in said petition.

The opinion and order of the Superior Court of Los Angeles County in the matter of the application of the same petitioner for a writ of *habeas corpus* properly determines the matter, although the same mistakes above referred to, as to some of the facts, are contained in that opinion. One misstatement is as to the size of the lot occupied by petitioner. Instead of the large lot described in her original petition and in the opinion above referred to, she occupied but a small city lot approximately 50 feet in width and 147.68 feet in depth, of which about 50 feet by 100 feet is not devoted to residence purposes by said petitioner. Said lot abuts on the rear a lot of similar width and of approximately similar depth which fronts on Goodwin Avenue in the city of Los Angeles, which lot is also occupied by a residence. The property fronting on said Goodwin Avenue is divided into lots of 50 feet in width, each of which is occupied by one or more dwellings. The property fronting on Sequoia Street—on which street the property of petitioner fronts— is divided into lots each of which is 50 feet in width, the lots on both sides of said street being of equal width, and each of the lots fronting upon said Sequoia Street and upon the south side of Goodwin Avenue are occupied by one or more

inhabitated dwellings, with the exception of occasional lots which have not yet been built upon.

It was under the opinion and order of the superior court, a copy of which is contained in the return to the writ, that petitioner was remanded to the custody of the chief of police of the city of Los Angeles. Said opinion and order is incorporated herein, as said opinion, taken with the statement of facts hereinbefore set out, answers all of the points raised by petitioner in this matter.

"In the Superior Court of the State of California, in and for the County of Los Angeles. In the Matter of the Application of Edna Ellis, For a Writ of Habeas Corpus. No. 7565. Opinion and Order.

"Petitioner seeks her release by habeas corpus from custody upon a charge of violation of a city ordinance regulating the keeping of bees. By the terms of the ordinance (Sec. 34.15 of the Municipal Code, Ordinance No. 77,000), a district was delimited in which bees may lawfully be kept and their keeping outside of the district was made unlawful. This district may be described generally as embracing the San Fernando Valley and the mountainous regions lying between that valley and the ocean, and extending from the city of Beverly Hills northerly to the city boundary line. These areas are identified in the ordinance as being two parcels of territory annexed to the city and known as the San Fernando district and the Westgate district, with a reference to the date of each annexation. The former contains 169.89 square miles and the latter 48.67 square miles. The remainder of the city contains some 232.19 square miles.

"Petitioner lives and keeps a few stands of bees upon a lot 150 feet by 250 feet, located in the vicinity of the Los Angeles riverbed, north of Los Feliz Boulevard, and between Griffith Park and San Fernando Road. It is a residential district in the restricted area; hence petitioner's arrest. She attacks the ordinance upon constitutional grounds. Her claim that it unlawfully discriminates against her is based upon two sets of facts, first; that in the area in which the keeping of bees is prohibited, there are many localities fully as suitable for bee culture as those in which that pursuit is allowed, and second; that there are in the latter district a number of closely built up residential and business districts which are unsuitable for the business of apiarists. But while

the facts are as contended by petitioner, it does not necessarily result that the ordinance is invalid. ■ There is discrimination in the ordinance, as there must be in all ordinances of this type, but discrimination alone, unless it be wholly unreasonable, will not invalidate an ordinance which divides a city into districts for the purpose of regulating the uses which may be made of the properties situated in the several districts. The tests of validity in such cases are: Does the ordinance bear a reasonable relation to the public health, morals, safety or general welfare; have the districts been created according to a fair and rational plan? We are of the opinion that the ordinance successfully meets these tests.

■ The San Fernando Valley is largely given over to ranching; by far the greater part of the Westgate district lies in rugged mountain territory. Both districts are admirably adapted to the business of apiarists. Comparable areas in the districts in which bees are not allowed to be kept are comparatively few in number, although they do embrace some thousands of acres of ranch land and mountainous regions. It may be conceded that the ordinance falls short of perfection; a more meticulous discrimination than the one disclosed by the ordinance might have acknowledged the fitness of these large vacant or sparsely settled areas for the bee business, and might also have recognized as unsuitable for that use such districts as the one located between Sunset and Pico Boulevards, west of the city of Beverly Hills. Although somewhat ragged around the edges the ordinance as a whole is well patterned. There has been set aside for those desiring to engage in the business, a district of some 140,000 acres, or nearly one-half of the area of the entire city. The business of keeping bees has been excluded from nearly all of the city proper. Such exclusion is not unreasonable. City people unaware of the inherent proclivity of bees to attend strictly to their own business, and not understanding that bees are by nature retaliatory rather than aggressive, become excited and apprehensive of unprovoked assault when bees appear, confusing their motives with those of the mosquitoes. Bees annoy them. But more serious than mere annoyance is the fact that the not infrequent combination of a bee and an excited motorist in the same automobile presents a major traffic hazard. And because the business of bees keeps them on the wing most of the time, their hives must

be removed quite a distance from the centers of population, if the city people are to have the protection which they are believed to require. This the ordinance attempts to accomplish. Petitioner's property may be of a sufficient size to allow her lawfully to keep other creatures which are welcome in a rural community, but offensive to neighbors when harbored in the city. But this fact does not aid her case. Regulation which would be adequate in the case of goats, rabbits or other animals which may be confined within property lines (*non constat* that the odors do not remain vagrant), might be wholly ineffective as applied to bees. Petitioner's bees presumably are at large, and know nothing as to the size of her premises. It cannot reasonably be claimed that everyone having a lot of 150 by 250 feet has the right to maintain thereon an apiary. If the ordinance should be considered as an unlawful discrimination against owners who have large tracts of agricultural land in the restricted area, petitioner is not thereby hurt, because, owning nothing more than a large city lot, she can not claim to be in their situation. It is with her rights, and not those of land owners differently situated, that we are concerned. She may not complain of the ordinance unless her own rights in the use and enjoyment of her property have been infringed. (*Brown* v. *City of Los Angeles,* (1920) 183 Cal. 783, 787 [192 Pac. 716]; *Ex parte Quong Wo,* (1911) 161 Cal. 220, 233 [118 Pac. 714]; *People* v. *Rogers,* (1931) 112 Cal. App. 615, 618 [297 Pac. 924]; *A. F. Estabrook Co.* v. *Industrial Acc. Com.,* (1918) 177 Cal. 767, 770 [177 Pac. 848]; *People* v. *Steelik,* (1921) 187 Cal. 361, 375 [203 Pac. 78].) Nor is the ordinance invalid because it fails to include in the restricted district all of the thickly populated areas. It was for the City Council to say where the lines were to be drawn. (*Ex parte Hadacheck,.* (1913) 165 Cal. 416, 422 [132 Pac. 584, L. R. A. 1916B, 1248]; *Hadacheck* v. *Sebastian,* (1915) 239 U. S. 394, 413, 414 [36 Sup. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927].) When this has been done under a general comprehensive plan, it is no objection to the legality of the result that the apiarists are to be found on one side of the street but not on the other. The courts have no power to dictate to the Council as to how the city should be zoned. A law cannot be annulled by the courts merely because it is believed that a better one could have been drawn, nor

unless it is so arbitrary and unreasonable as to show a failure to exercise a fair legislative discretion. Petitioner has wholly failed to show any injustice resulting from the inclusion of her property in the restricted district. For the reasons stated and upon the foregoing authorities the ordinance must be sustained. (See, also, *Zahn* v. *Board of Public Works,* (1925) 195 Cal. 497, 514 [234 Pac. 388] ; *Miller* v. *Board of Public Works,* (1925) 195 Cal. 477, 490 [234 Pac. 381, 38 A. L. R. 1479] ; *Sunny Slope Water Co.* v. *City of Pasadena,* (1934) 1 Cal. (2d) 87, 93, 94 [33 Pac. (2d) 672].)

"The writ is discharged and the petitioner is remanded. . . . Dated Aug. 30, 1937."

For the reasons hereinbefore stated, the writ is discharged and petitioner is remanded.

Doran, J., and White, J., concurred.