*788
 
 FOURT, J.
 

 This is an appeal from a judgment which, in effect, declared that defendants (fraternity houses) be enjoined from occupying, maintaining and using certain described properties in an “R-4” zone unless a variance or exception to the zoning ordinance of Long Beach be obtained.
 

 The City of Long Beach brought an action to enjoin the named fraternities from continuing to use and occupy described premises as fraternity houses. The described premises are located in what is generally known as the “R-4” apartment house district under the Long Beach comprehensive zoning ordinance. Defendants commenced their use of the described premises in question after the municipal zoning code was amended to permit fraternity and sorority houses a permitted use for a specified period of time which expired on November 17, 1964. Since November 17, 1964, fraternity and sorority houses have been a permitted use in a business district (C-l).
 

 The cause was submitted to the trial judge upon an agreed statement of facts. That statement set forth among other things: “This action is one for injunctive relief. The first cause of action is to enjoin the continuous violation on the part of the defendant fraternities of a zoning ordinance. The second cause of action is to abate a public nuisance by way of injunction. The defendant fraternities maintain fraternity houses within the corporate limits of plaintiff, City of Long Beach, which houses are situated in an area zoned as R-4.” Further copies of the pertinent sections of the Municipal Code were attached to, and made a part of, the agreed statement. It was also set forth that the various described premises were occupied and maintained and used for living purposes by the members of the respective fraternities, that the members of such organizations function as fraternities on the respective premises, and that the members of the fraternities attend California State College at Long Beach, an educational institution. Further, in several instances application for a variance had been made and denied by the proper authorities, that a proper notice of zoning code violation had been served upon all of the defendants. Further, that there are seven sororities, the members of which occupy premises for living purposes and for functioning as sororities on premises zoned R-4 under special permits issued in accordance with the terms of the zoning ordinance by the city manager. The issues are stated generally to be whether the zoning ordinance of Long Beach
 
 *789
 
 violates article I, sections 11, 21 and 26 of the Constitution of California, whether there is a violation of the equal protection and due process provisions of the Fourteenth Amendment of the Constitution of the United States, whether the city exceeded its authority in enacting the ordinance under the provisions of the Government Code, whether the zoning ordinance is a proper restraint on use or a restraint as to who may exercise the use and whether the defendants violated the zoning ordinance. The cause was “submitted on agreed facts set forth in the joint pretrial statement, and written evidence....”
 

 Findings of fact were filed wherein the court found upon all of the facts contained in the agreed statement and that “the use of the properties by the defendants was the use thereof as fraternity houses; that said use is prohibited in a so-called R-4 zone, but is permitted in a so-called C-l zone.” As conclusions of law the court determined that the zoning ordinance did not violate either sections 26, 11, or 21 of article I of the Constitution of California, that the zoning ordinance did not violate any of the provisions of the Fourteenth Amendment of the Constitution of the United States as applied to defendants, that the city in enacting the ordinance and in enforcing it did not exceed its authority granted pursuant to Government Code, section 65800, subdivision (a), that the zoning ordinance is a valid exercise of the police power and does not constitute a restraint upon the exercise of a use, but upon the use itself, that the use by defendants of the properties constitutes a residential use by a fraternity and therefore defendants violate the zoning ordinance, and that the city is entitled to an injunction against defendants prohibiting them from using the premises in question as a fraternity house, unless a variance or exception under the provisions of the zoning ordinance is obtained. Judgment was made and entered in conformity with the conclusions of law. A timely notice of appeal was filed.
 

 Tlie real question involved in this ease is whether the city, under the circumstances, has the power to prohibit a fraternity house as a permitted use in an apartment house district or multiple dwelling district. The city council determined that fraternity and sorority houses shall be a permitted use in a business district (C-l) or in an apartment house district (R-4) only by a permit issued by the city manager permitting such occupancy after November 14,1964.
 

 
 *790
 
 A fraternity is a body of men associated together for their common interest, business or pleasure. In American colleges it is a student organization, either a nationally chartered society comprising many affiliated chapters or a single chapter in one institution, formed chiefly to promote friendship and welfare among members, and usually having secret rites and a name consisting of Greek letters. (See
 
 Alpha Rho Alumni Assn.
 
 v.
 
 City of New Brunswick,
 
 126 N.J.L. 233 [18 A.2d 68, 70]; see also,
 
 Brotherhood of R.R. Signalmen
 
 v.
 
 Zoning Board,
 
 348 Ill.App. 106 [108 N.E.2d 43, 45].)
 

 Section 65800, Government Code, provided in part: “Pursuant to the provisions of this chapter, the legislative body of any county or city by ordinance may: (a) Regulate the use of buildings, structures, and land as between agriculture, industry, business, residence and other purposes....” The zoning ordinance in this instance is a comprehensive ordinance which establishes residential and other districts and excludes from certain districts all nonconforming uses. There can be no doubt that as of now a city governing body has the right to adopt such an ordinance if the same is not arbitrary in its operation. (See Gov. Code, §§ 65800 and 65850.)
 

 The determination of the validity of the zoning ordinance will turn on whether it is reasonable, or arbitrary and oppressive. However, where those matters are fairly debatable the decision of the legislative body must not be interfered with by a court. Every intendment is in favor of the validity of zoning ordinances and it is presumed that the enactment as a whole is justified under the police power and adopted to promote the public health, safety, morals and general welfare. This court cannot write zoning laws nor can we say that the City Council of Long Beach has erred in drawing lines of zoning districts or in restricting territory devoted to R-4 uses, unless there is a clear showing upon the part of defendants that the council abused its discretion by making restrictions which are unreasonable.
 

 As stated in
 
 In re Ellis,
 
 25 Cal.App.2d 99, 103 [76 P.2d 516] : “. . . The courts have no power to dictate to the Council as to how the city should be zoned. A law cannot be annulled by the courts merely because it is believed that a better one could have been drawn, nor unless it is so arbitrary and unreasonable as to show a failure to exercise a fair legislative discretion. ’ ’
 

 
 *791
 
 The rights of an owner or occupier of property to the use of his property must be subordinated to the public good, and control and restrictions as to use is subject only to the constitutional limitations which are imposed upon the legislative body. Furthermore, the legislative determination with reference to a regulation of the use of property, or the restriction of such a use will be given great weight in any judicial inquiry into the validity of the enactment, and courts will not interfere with the discretion of law-making bodies unless it is clear that needless oppression is imposed and constitutional rights are invaded. The very enactment of the ordinance per se furnishes prima facie evidence of the existence of those facts and conditions which made the ordinance reasonable and necessary.
 
 (Zahn
 
 v.
 
 Board of Public Works,
 
 195 Cal. 497 [234 P. 388];
 
 Marblehead Land Co.
 
 v.
 
 City of Los Angeles,
 
 47 F.2d 528;
 
 Clemons
 
 v.
 
 City of Los Angeles,
 
 36 Cal.2d 95 [222 P.2d 439] ;
 
 McCarthy
 
 v.
 
 City of Manhattan Beach,
 
 41 Cal.2d 879 [264 P.2d 932].) Shortly put, as stated in
 
 Burk
 
 v.
 
 Municipal Court,
 
 229 Cal.App.2d 696, at page 700 [40 Cal.Rptr. 425] :
 

 “. . . Municipal ordinances are presumed to be constitutional if any rational consideration supports their enactment. [Citations.] If any rational motive exists for the exercise of the police power, the motive for its exercise becomes immaterial and not a proper subject of inquiry and the court will not substitute its judgment for that of the legislative body. [Citations.]”
 

 The city council in this instance, exercising its legislative discretion, determined that fraternity and sorority houses would be a permitted use in a business district (C-l). Appellants seem to argue that because the members of the fraternities live at the premises in question, therefore their use is solely a residential use. The living on the premises is not the test. People live in hotels, rest homes, hospitals for the mentally ill, trailer parks and otherwise, but that is not to say that such activities cannot be restricted in an R-4 zone. The character of the district, the conservation of property values, traffic conditions, parking, noise, and the peace, quiet and comfort of the district for true residential purposes demonstrate at once that reasonable minds might differ as to the necessity or propriety of the restrictions in the present ordinances.
 

 Appellants have cited
 
 City of Syracuse
 
 v.
 
 Snow
 
 (1924) 123
 
 *792
 
 Misc. Rep. 568 [205 N.Y.S. 785] and state that the case holds that a sorority house was not a business and therefore could not be limited to commercial zones. The court did not there hold that a sorority was not a business. The court did hold that the regulation did not promote the health, safety and welfare of the city and, in effect, that a sorority was truly a “family” and, further, that “ [i]n this particular locality, as a matter of public welfare, the interests of the University are paramount to those of the citizens residing there.” (P. 790.) In 1957, in
 
 City of Schenectady
 
 v.
 
 Alumni Assn, of Union Chapter, Delta Chi Fraternity,
 
 5 App.Div.2d 14 [168 N.Y.S. 2d 754] the court declined to follow appellants’ cited case and in effect upheld the constitutionality of an ordinance which provided that fraternities could occupy a “C” zone as described in the ordinance.
 

 Appellants mistakenly proceed upon the theory that a fraternity house is identical to a boarding house or a lodging house merely because the members of the fraternity eat and sleep at the fraternity house, and that eating and sleeping are incidents of a residential use, and, therefore, by prohibiting fraternities from an R-4 zone, fraternity members are being prohibited from exercising a residential use of property. The facts of life dictate that there is a vast difference between a boarding house or lodging house and a fraternity house. It was appropriately said in
 
 Pettis
 
 v.
 
 Alpha Alpha Chapter of Phi Beta Pi,
 
 115 Neb. 525 [213 N.W. 835, 837-838]: “. . . But it will be presumed that they [the student members of the fraternity] are not different from an equal number of young men students in somewhat similar situations at the other seats of learning. . . .
 

 ‘ ‘ ‘
 
 The occupancy of the upper flat of the dwelling house as headquarters and elubrooms of a college fraternity amounts to a constructive eviction of the tenant of the lower flat and a breach of an implied covenant for quiet enjoyment, entitling the tenant to an injunction to restrain such breach. ’
 

 “And . . . speaking of college students generally, the court observes that it is a matter of common knowledge and well established that groups of students are for the most part exuberant, boisterous, and hilarious, and that they do not ordinarily keep regular hours and are addicted to the use and abuse of vibrant and sonorous musical instruments.”
 

 The city council apparently was fully aware that college spirit contemplates frequent gatherings with attendant boister
 
 *793
 
 ous conduct on occasions. The “rush parties,” the dances, the rallies and other manifestations of the collegiate spirit are present in a fraternity house and frequently absent in a boarding house, a lodging house or an apartment.
 

 Appellants complain that inasmuch as seven sororities were granted special permits that the law is being used to limit persons rather than uses. Of course, the burden is on appellants to show that the action of granting the special permits was arbitrary, capricious or discriminatory. In
 
 City of San Marino
 
 v.
 
 Roman Catholic Archbishop,
 
 180 Cal.App.2d 657, 674 [4 Cal.Rptr. 547], it is set forth:
 

 “. . . In their brief, defendants argue: ‘Defendants respectfully submit that this fact highlights the inequity of the present ruling of the City Council. In weighing whether or not the variance to defendants should be granted, the authorities must afford to defendants at least the same dignity and treatment as to shopping centers and business structures, and the authorities should not be permitted to grant variances to one religious establishment while withholding, in an obviously critical situation, a variance to defendants. ’ This same argument was unsuccessfully advanced in
 
 County of San Diego
 
 v.
 
 McClurken,
 
 [37 Cal.2d 683], the court holding at page 691 [234 P.2d 972] : ‘The fact that variances may have been granted to some owners and denied to others, however, does not establish unreasonable discrimination. The granting or denial of variances rests largely in the discretion of the body designated by the zoning ordinance for that purpose, and a denial of a variance will not be disturbed in the absence of a clear showing of abuse of discretion. ’ To the same effect are
 
 Minney
 
 v.
 
 City of Azusa, supra,
 
 page 33 [164 Cal.App.2d 12 (330 P.2d 255)]; and
 
 Wilkins
 
 v.
 
 City of San Bernardino,
 
 29 Cal.2d 332, 341 [175 P.2d 542]
 

 Appellants also argue that the state through the courts has discriminated against the fraternities in that they have been denied any place in a residential zone for a residential use. The fraternities were not discriminated against— they were in violation of a valid zoning ordinance and the city saw fit, properly so, to enforce the ordinance by an injunction. (See
 
 Donovan
 
 v.
 
 City of Santa Monica, 88
 
 Cal.App.2d 386 [199 P.2d 51] ;
 
 Franklin
 
 v.
 
 City of Sacramento,
 
 204 Cal.App.2d 450 [22 Cal.Rptr. 331];
 
 City of Fontana
 
 v.
 
 Atkinson,
 
 212 Cal.App.2d 499 [28 Cal.Rptr. 25];
 
 City & County of San
 
 
 *794
 

 Francisco
 
 v.
 
 Burton,
 
 201 Cal.App.2d 749 [20 Cal.Rptr.
 
 378]; City of San Mateo
 
 v.
 
 Hardy,
 
 64 Cal.App.2d 794 [149 P.2d 307].)
 

 Lastly, appellants assert that they have been denied a right to maintain property for the residence of their members on the basis of membership in a fraternity and not upon the basis of the use itself. The zoning ordinance simply states that you cannot have a fraternity house in an “R-4” zone. It does not state that no member of a fraternity can reside in an “R-4” zone. A fraternity member can reside in an “R-4” zone but he cannot reside in a fraternity house in an “R-4” zone.
 

 The ordinance in this instance is a valid and proper exercise of the police power, the city council properly and legally exercised its discretion in restricting fraternity houses in an “R-4” zone.
 

 The judgment is affirmed.
 

 Wood, P. J., and Lillie, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied January 3, 1968.