111 N.J. Super. 359 (1970)
268 A.2d 333
KIRSCH HOLDING COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THE BOROUGH OF MANASQUAN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 23, 1970.
*362 Mr. Theodore D. Parsons, Jr. for plaintiff (Messrs. Parsons, Canzona, Blair & Warren, attorneys).
Mr. John D. Wooley for defendant.
SIMMILL, J.S.C.
The problem of dealing with group rentals for the summer season is one which has beset most, if not all, of the municipalities bordering on and adjacent to the seashore. As these resort municipalities grew, housing units useable only for summer occupancy were erected and rented by their owners to persons desirous of enjoying the many advantages of New Jersey's famed beaches. The owners of these units soon found that it was more lucrative to rent to groups of persons rather than to families, since *363 the rents realized could be greater due to spreading the amount to be received among several persons. The end result, while financially beneficial to the landowners, adversely affected the great majority of the populace. Noise, obscene and profane language, wild parties, immorality, lewd conduct, drunkenness, parking and traffic congestion, all contributed to the destruction of the peace and quiet which was the objective of most of the residents. Family vacationists, with children, were exposed to the problems aforementioned, which originated in great part from the housing units that had been rented to groups.
In an attempt to curb these undesirable conditions the various municipalities adopted ordinances having to do with disorderly conduct, etc., under the police powers, but the implementation thereof proved to be difficult due primarily to lack of enforcement. The next step to combat the evil was the adoption of ordinances under the police powers which banned group rentals and which restricted to families the summer rental of these household units. These ordinances were declared to be invalid in Larson v. Mayor, etc., Spring Lake Heights, 99 N.J. Super. 365 (Law Div. 1968), because of the definition of "family," as set forth in the ordinance, and because they went beyond the public need to be served as unnecessarily regulating and prohibiting otherwise lawful conduct. The renting to groups, in and of itself, was not invalid, and this court held that the end did not justify the means.
The municipalities then sought another approach. They amended their zoning ordinances to prohibit what this court declared was excessive of their police powers. The Borough of Manasquan adopted such an amendment, and this litigation is directed to the validity thereof. The amendment was adopted March 9, 1970, and provides, among other things:
Sec. 20. A "family" as used in this ordinance shall be deemed to mean one or more persons related by blood or marriage living together as a single housekeeping unit, or a collective number of persons living together in one house, whose relationship is of a permanent *364 and distinct domestic character, and cooking as a single housekeeping unit. This definition shall be deemed to include maids, servants or other employees of one or more members of the family. This definition shall not include any society, club, fraternity, sorority, association, lodge, combine, federation, group or organization, nor include a group of individuals whose association is temporary and resort-seasonal in character or nature.

* * * * * * * *
Sec. 62A. No house, dwelling, building, structure or enclosure, or any part of a house, dwelling, building, structure, or enclosure within the Borough of Manasquan shall be used or be permitted to be used or be rented to for use or be rented by for use, as living quarters or sleeping quarters, or for living purposes or sleeping purposes, by or to any society, club, fraternity, sorority, association, lodge, combine, federation, group, or organization or to any person or member on behalf of the same or to any group or collection of persons who are unmarried or who do not qualify as a family as defined in ARTICLE III, Sec. 20 of the Zoning Ordinance as herein amended.

* * * * * * * *
3. The Zoning Map which is part of the Zoning Ordinance of the Borough of Manasquan referred to in the title hereof is hereby amended so that Lots, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and the most southwesterly 100 feet of Lot 1 in Block 93, as shown on the current Tax Map of the Borough of Manasquan, shall be included in the R-2 residential zone.
Plaintiff owns real estate in Manasquan. For several years prior to the adoption of the aforesaid amendment it has rented housing units to persons and groups of persons not within the definition of "family" as set forth in the amendment. It also alleges that prior to the adoption of the amendment it has rented for the 1970 summer season properties to persons not within the definition of "family." It has been notified that Manasquan plans to prosecute violations of the amendment, notwithstanding prior leases and notwithstanding alleged nonconforming uses. It contends it will be subject to irreparable harm if the amendment is enforced because it will be unable to re-rent the units heretofore leased and will be unable to procure more rental income which would be realized by renting to groups rather than to families. It also charges that the amendment arbitrarily prohibits rental to a class of persons who do not fall within the definition of "family," exceeds the zoning power *365 of a municipality, is not reasonably related to zoning, the definition of "family" is vague, and the amendment violates plaintiff's constitutional rights. It seeks an injunction against the enforcement of the ordinance and an adjudication that the ordinance be declared invalid.
As a basic proposiition of law, municipalities have no inherent authority to enact zoning ordinances except as derived from the State by statute. This power has been conferred by the legislature by virtue of N.J.S.A. 40:55-30. For such an ordinance to be valid it must bear a reasonable relation to the powers conferred by that act, and must tend in some degree to promote the public good. It must bear a substantial relation to the public health, morals, safety or welfare in its proper sense, and such an ordinance is presumed to be reasonable  the one attacking its validity has the burden of establishing the contrary. Lionshead Lake v. Wayne Tp., 13 N.J. Super. 490 (Law Div. 1951). Zoning is based on an enabling act which sets forth specific purposes and classifies homogeneous and compatible uses into separate districts under a comprehensive plan so as to enable a community to exclude specific uses which could not be so excluded under the municipality's police powers. Andover Tp. v. Lake, 89 N.J. Super. 313 (App. Div. 1965). The power to zone against a particular use is clear. Roman Catholic Diocese v. Ho-Ho-Kus, 47 N.J. 211 (1966) (schools in residential districts); Napierkowski v. Gloucester Tp., 29 N.J. 481 (1959) (trailer homes); Pierro v. Baxendale, 20 N.J. 17 (1955) (hotels and motels).
It is obvious that the purpose of the amendment in question is to regulate objects specifically enumerated as proper zoning objectives. The general welfare concept with regard to zoning has received a broad definition by our courts. Pierro v. Baxendale, supra. The general provision relating to health, morals and general welfare should be examined in the light of existing circumstances in a community, and in determining the question of reasonableness cognizance must be taken of the problem to be solved by the municipality *366  for example, the requirement necessary to minimize the offensive character of the conduct to be regulated. State v. Mundet Cork Corp., 8 N.J. 359 (1952). At oral argument it was stipulated that the facts as found by the court in Larson, supra, would apply to this case. There is no doubt in the court's mind that such conduct is offensive and in derogation of the public morals, health and general welfare.
The exclusion of fraternities and sororities has been held a valid exercise of the zoning power, and it has also been held that a fraternity or sorority is not a family as used in ordinances establishing residential zones. Long Beach v. California Lambda Chapter of Sigma Alpha Epsilon, 255 Cal. App.2d 789, 63 Cal. Rptr. 419 (D. Ct. App. 1967). The groups here prohibited are analogous to fraternities or sororities, except that they do not have Greek letters, organization, supervision, leadership or discipline. Based on the foregoing there is no question in the court's mind that the amendment is a proper and valid exercise of the zoning power.
Plaintiff's contention that larger rents may be obtained from groups as opposed to families has no meritorious base. A zoning ordinance does not contravene constitutional limitations because the restricted use may not be the most profitable use to which the property can be devoted. Rexon v. Bd. of Adjustment, Haddonfield, 10 N.J. 1 (1952).
Nor is the amendment invalid because it also applies to business as well as residental zones. There is no prohibition against zoning against a particular use, whether it be in a business or in a residential zone. As long as it serves to further the purposes of zoning as set forth in N.J.S.A. 40:55-32, it is valid. Here there is no question that the municipality sought to lessen congestion in the streets, prevent overcrowding, avoid undue concentration of population and promote health, morals and the general welfare. All these purposes are the essence of zoning. The mere fact that a particular business use is prohibited in a *367 business zone does not render void the prohibition. If that particular business is in furtherance of the purposes of zoning, its prohibition is licit. There is nothing unreasonable about the ordinance, and while reasonable persons may differ as to the wisdom of the enactment, it is not for the court to substitute its judgment (even if the court were so inclined, which it is not), for that of the duly elected legislative body. The functions of the legislative bodies and the judicial forums are distinct, as pointed out in Kozesnik v. Montgomery Tp., 24 N.J. 154 (1959).
The zoning statute delegates legislative power to local government. The judiciary of course cannot exercise that power directly, nor indirectly by measuring the policy determination by a judge's private view. The wisdom of legislative action is reviewable only at the polls. The judicial role is tightly circumscribed. We may act only if the presumption in favor of the ordinance is overcome by a clear showing that it is arbitrary or unreasonable. [at 167]
See also Silco Automatic Vending Co. v. Puma, 105 N.J. Super. 72 (Law Div. 1969).
Insofar as the attacks on the reasonableness or arbitariness of the ordinance are concerned, therefore, the court rejects them and holds that the ordinance is valid on these grounds.
The next problem is as to the definition of "family." Plaintiff contends that the definition is vague. There are many words which are difficult of definition, but which are well understood by everyone. "Family" is one of these. In "Words and Phrases" (perm. Ed., 1959), there are some 60 pages of definitions of "family" employed by courts and legislatures. Webster's New International Dictionary lists 11 definitions of the word. This court cannot understand how plaintiff could in any way be misled by the language in the ordinance, and the court cannot think of any better definition. Inarticulate expression is not uncommon in legislation. Amodio v. Bd. of Commissioners, West New York, 133 N.J.L. 220 (Sup. Ct. 1945). This court is of the opinion that there is no misunderstanding as to the meaning of the word "family." "The test, therefore, of whether *368 any house is being used as a single-family dwelling house is whether it is being occupied by a one-family unit." Neptune Park Ass'n v. Steinberg, 138 Conn. 357, 84 A.2d 687 (Sup. Ct. Err. 1951). Accordingly, the court finds the definition does not invalidate the ordinance.
The only question remaining is that of nonconforming uses. Plaintiff alleges that it has leased housing units to groups for many years and that prior to the adoption of the ordinance it had leased for the 1970 summer season some of the units owned by it. It seeks an injunction against the enforcement of the ordinance as to these units.
Nonconforming uses are sanctioned by the Legislature in N.J.S.A. 40:55-48:
Any non-conforming use or structure existing at the time of the passage of an ordinance may be continued on the lot or in the building so occupied, and any such structure may be restored or repaired in the event of the partial destruction thereof.
8 McQuillin Municipal Corporations (3d ed 1965) ¶ 25, 185, at 21, states:
The term "non-conforming use" is employed in the law of zoning, for the most part, to refer to a use which not only does not conform to the general regulation or restriction governing a zoned area but which lawfully existed at the time that the regulation or restriction went into effect, and has continued to exist without legal abandonment since that time.
The philosophy of the Legislature is to restrict nonconforming uses with an aim toward zoning conformity as soon as possible, yet justice, fundamental property rights and constitutional requirements of due process must not be overridden.
The uses protected by the nonconforming use provisions of the zoning statute are the uses in fact existing on land at the time of adoption of a new zoning ordinance (as opposed to an intention to use land), Ardolino v. Florham Park, 24 N.J. 94, 104 (1957), and if a use was in fact *369 existing at such time, it may continue, insofar as the zoning act is concerned, as long as it continues without substantial change or enlargement. Scavone v. Totowa, 49 N.J. Super. 423 (App. Div. 1958), and cases therein cited.
The right of an owner to continue a nonconforming use is a property right, a part of the land title, that can only be extinguished by acts or omissions indicating an intention to abandon it. Scavone v. Totowa, supra. And nonconforming uses may be continued as of right. Grundlehner v. Dangler, 29 N.J. 256, 263 (1959).
Plaintiff herein owns many housing units in Manasquan. Which ones are protected as nonconforming uses depends on each specific housing unit. This court, at this juncture and on the proofs before it, cannot make an adjudication as to which units are nonconforming and which are not. That determination will have to be made on an individual basis. If plaintiff has a valid nonconforming use which has not been abandoned, it may raise the question as a defense to any prosecution for violation of the ordinance.
The order to show cause, therefore, is discharged with prejudice as to the question of the validity of the ordinance, and discharged without prejudice as to the nonconforming use problem.