134 N.J. Super. 384 (1975)
341 A.2d 356
YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF SUMMIT, NEW JERSEY, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
BOARD OF ADJUSTMENT OF THE CITY OF SUMMIT AND MARTIN J. EGAN, BUILDING INSPECTOR OF THE CITY OF SUMMIT, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 18, 1975.
*386 Mr. Kenneth R. Johanson for plaintiff (Messrs. Bourne and Noll, attorneys).
Mr. Arthur P. Condon for defendants.
DAVIDSON, J.S.C.
Plaintiff Young Women's Christian Association of Summit is the owner of premises located in the R-15 single-family district of Summit, as established under its zoning ordinance adopted June 5, 1968 as amended. The Association has been authorized by the Division of Youth and Family Services of New Jersey to operate a group home on the premises for not more than ten adolescent girls to be referred there by the Division.
In November 1974 a local citizens' group filed an application with the board of adjustment seeking an interpretation of the zoning ordinance and a declaration that plaintiff's proposed use of the premises would be in violation of the ordinance.
A hearing was conducted and on February 3, 1975 the board adopted a resolution declaring the proposed use to be in violation of the zoning ordinance and directing the building inspector to refuse to issue a certificate of occupancy. Based upon that resolution the building inspector refused to issue the certificate by letter dated February 18, 1975.
Plaintiff thereupon filed a complaint in lieu of prerogative writs asking this court to (1) declare the board's resolution of February 3, 1975 void; (2) declare the proposed use of the premises to be permitted under the ordinance; (3) enjoin the Board from taking any further action to prevent the use of the premises as a group home, and (4) direct *387 the building inspector to issue a certificate of occupancy for use of the premises for that purpose.
The facts are not in dispute and the matter is now before the court on a motion for summary judgment.
Plaintiff contends that the board lacked jurisdiction to grant the applicants the relief requested under both the enabling state legislation and the provisions of the ordinance. This court accepts the correctness of that position.
Our State Constitution grants to the Legislature the power to enact legislation enabling municipalities to adopt zoning ordinances. N.J. Const. (1947), Art. IV, § VI, par. 2; N.J.S.A. 40:55-30 et seq. Under the enabling legislation a board of adjustment is a "statutory, quasi-judicial body whose powers and jurisdiction are specified and strictly delimited by N.J.S.A. 40:55-39." Auciello v. Stauffer, 58 N.J. Super. 522, 527 (App. Div. 1959).
The resolution passed by the Summit Board of Adjustment on February 3, 1975 includes the finding that the matter came before the board by application pursuant to N.J.S.A. 40:55-39(a) and (b), which read as follows:
The board of adjustment shall have the power to:
a. Hear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, decision or refusal made by an administrative official or agency based on or made in the enforcement of the zoning ordinance.
b. Hear and decide, in accordance with the provisions of any such ordinance, requests for special exceptions or for interpretation of the map or for decisions upon other special questions upon which such board is authorized by any such ordinance to pass.
Because the building inspector's denial of plaintiff's request for a certificate of occupancy was based entirely on the resolution of the board directing him to do so, the application by the citizens' group could not properly have been considered an appeal from his decision, and N.J.S.A. 40:55-39(a) accordingly can have no effect here. Counsel for the board contends that the strongest basis for its jurisdiction flows from the language of N.J.S.A. 40:55-39(b) *388 empowering the board to hear and decide "special questions upon which such board is authorized by any such ordinance to pass." The strength of that contention however, hinges upon the validity of the authorization provided in the ordinance.
Section 12.0 of the zoning ordinance reads as follows:
Pursuant to the Statute quoted in this Appendix, the Board of Adjustment is empowered to act on (a) errors, (b) conditional permits (special exceptions) and interpretations of this Ordinance, (c) hardship variances, and (d) use variances, and to adopt its own rules of procedure.
A subsequent provision, § 12.5, is entitled "Powers of the Board of Adjustment" and repeats the language of N.J.S.A. 40:55-39. There is no language interrelating the two provisions. The language in controversy is contained in § 12.0 authorizing the Board to interpret its own ordinance.
Plaintiff challenges only the power of the board to issue an "interpretative decision" construing the ordinance in such a way as to exclude the use proposed for their premises. They do not directly attack the validity of the ordinance. Because zoning ordinances are to be liberally construed by the courts in favor of the municipality, N.J. Const. (1947), Art. IV, § VII, par. 11, and because the issue is not dispositive of this case, this court offers no conclusion as to the ability of the particular language to withstand constitutional attack.
The interpretation of an ordinance is a purely legal matter, clearly not treated as such by the board. Moreover, that body had no authority to issue a directive to the building inspector, and all the more so when issued as part of a resolution in the form of a pseudo-declaratory judgment which this court finds was beyond its purview. This court has and will exercise the power to interpret the ordinance, because the meaning of its provisions raises questions which are peculiarly suited to judicial treatment, rather than to disposition by an administrative board in a quasi-judicial *389 function. The court's authority is not curtailed by the circumstances under which the matter reaches it. Jantausch v. Verona, 41 N.J. Super. 89, 96 (Law Div. 1956), aff'd 24 N.J. 326 (1957).
To say that the board lacked power to construe the ordinance and direct the building inspector as they did is not to say, as the court pointed out in the Jantausch case, that
* * * the views of others, both the board of adjustment and the building inspector should not receive respectful consideration, but rather that an erroneous interpretation by either is not secured from judicial disagreement by some special insulation impenetrable except upon a finding of arbitrariness, capriciousness, or unreasonableness. [41 N.J. Super. at 97]
This court finds that the resolution of February 3, 1975 was such an erroneous interpretation and must therefore be declared void.
On the substantive issue Plaintiff contends that the proposed use of its premises is a proper one under state law and the zoning ordinance; that the board was erroneous in ruling to the contrary, and that this court should therefore direct issuance of a certificate of occupancy.
In December of 1974, the Legislature clarified the status of group homes as single-family units by amending both N.J.S.A. 40:55-33.2 and N.J.S.A. 30:4C-26 to specifically include group homes, defined as "any single family dwelling used in the placement of 12 children or less pursuant to law recognized as a group home by the Department of Institutions and Agencies." L. 1974, c. 178.
The Summit Board of Adjustment specifically referred to both statutes, as amended, in the body of its resolution, stating that this ordinance does not discriminate against foster homes or group homes as defined therein. The board then concluded that the proposed use would violate the intent and purpose of the zone plan and the zoning ordinance, *390 and that L. 1974, c. 178 did not preclude them from rendering such an interpretative decision.
The board's major contention before this court is that while the City of Summit does not seek to prevent group foster homes from being established within its borders, the board should not be excluded by the Legislature from having a voice in the location of a group home within the community, having due regard for zoning and planning considerations.
The Summit zoning ordinance provides for five single-family districts, three of low density and two of medium density. There is also an additional zone in which single-family and twin-house dwellings are permitted. It is the board's position that considerations of density require that a group home be located in a medium-density district rather than the low-density district in which plaintiff's premises are located.
Control of density is a valid zoning objective, but in the exercise of the zoning power a municipality may only be validly concerned with the physical use of lands and structures thereon. Bridge Park Co. v. Highland Park, 113 N.J. Super. 219, 221-222 (App. Div. 1971); Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 125 N.J. Super. 376, 380 (App. Div. 1973).
The Summit zoning ordinance defines a "single family house" as "a free-standing unattached building designed for occupancy by one family, and containing one dwelling unit." The premises owned by plaintiff consists of a three-story residence with seven bedrooms generally designed for occupancy by one family, and a detached two-car garage. The ordinance defines a "family" as "a group of persons related by blood or marriage or otherwise lawfully living together in a dwelling unit." That definition is a valid one under both N.J.S.A. 30:4C-26 and 40:55-33.2, as amended. Thus, a group home would qualify as "one family" within the definition of a "single family house" under the ordinance.
*391 To suggest that "families" composed of residents of group homes are to be distinguished from natural families in determining which single-family districts will be considered open to them is to confuse the power to control physical use of premises with the power to distinguish among occupants making the same physical use of them. "It is of the very nature of the constitutional and statutory zoning principle that all property in like circumstances be treated alike." Beirn v. Morris, 14 N.J. 529, 535 (1954).
At the hearing on the motion counsel for the Board frankly conceded that it would have had no power to prevent a certificate of occupancy for these premises from being issued to a natural family of ten children.
The Legislature's position is clear. Communities may not use their planning and zoning powers to discriminate against group homes, no matter how packaged or disguised. By its "interpretative decision," the board of adjustment denied these children the same benefits as those of natural families just as surely as if the ordinance had done so directly. Discrimination is the result, and will not be sanctioned.
Plaintiff's motion for summary judgment is granted. The resolution of February 3, 1975 is declared void and of no effect. Plaintiff's proposed use of the premises is a permitted use under the ordinance, and the building inspector is directed to issue a certificate of occupancy. Plaintiff's request that defendants be restrained from any further action to prevent the proposed use of its premises is denied as there is no showing that any possibility of such action exists.