COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges McClanahan and Haley
Argued at Salem, Virginia


MATTHEW P. EPPERLY, S/K/A
  MATTHEW PATRICK EPPERLY

                                                              OPINION BY
v.        Record No. 2533-04-3              JUDGE ELIZABETH A. McCLANAHAN
                                                              OCTOBER 4, 2005
COUNTY OF MONTGOMERY


                    FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                                  Ray W. Grubbs, Judge

             Max Jenkins (Jenkins & Jenkins, on brief), for appellant.

             Martin M. McMahon, County Attorney, for appellee.


        Matthew Patrick Epperly was convicted of violating a Montgomery County zoning

ordinance and enjoined in the sentencing order to abate the violation.  He appeals from the

circuit court's subsequent order finding him in contempt and imposing sanctions for failure to

comply with the injunction.  Epperly contends that the court exceeded its authority by imposing

sanctions authorizing the County to enter upon the real property where the zoning violation

occurred and conduct, with immunity, an operation to abate the zoning violation; and to impose a

lien upon that property for any costs and expenses incurred by the County that were not

recovered from the operation.  For the reasons that follow, we affirm the court's contempt order.

                                     I.  BACKGROUND

        The record includes a written statement of facts in lieu of a transcript pursuant to Rule

5A:8.  As the record shows, Epperly operated an automobile graveyard located at 3207 Hawley

Road (the Hawley Road Property) in the County.[1]  The automobile graveyard had been in existence since before the County first adopted a zoning ordinance in 1969.  That ordinance required a special use permit for automobile graveyards, which made Epperly's automobile graveyard, consisting of approximately one acre, a nonconforming use.[2]

In October 2001, Epperly received a notice from the County stating that his failure to obtain a special use permit to expand the nonconforming automobile graveyard constituted a violation of § 10-47 of the Montgomery County Zoning Ordinance[3] (the ordinance).  That section of the ordinance makes it unlawful to expand a nonconforming use beyond the limits of the area occupied at the time the use became nonconforming, without first obtaining a special use

---

[1] Section 10-61 of the Montgomery County Zoning Ordinance defines "automobile graveyard" as "[a]ny lot or place which is exposed to the weather and upon which more than five (5) inoperative vehicles are placed, located or found.  An automobile graveyard is considered to be a junkyard."  That same section defines "junkyard" as "[a] lot on which junk material and/or inoperable vehicles are collected, stored, salvaged, exchanged or sold.  The term shall include . . . . automobile graveyards."  Id.

[2] Section 10-47(1) of the Montgomery County Zoning Ordinance provides that "[a]ny nonconforming use . . . which lawfully existed as of the effective date of this [ordinance] and which remains nonconforming, and any use . . . which has become nonconforming as a result of the adoption of this [ordinance] . . . may be continued or maintained [but] only in accordance with the terms of this [ordinance] . . . ."  "Nonconforming use" is then defined in § 10-47(2) as "the otherwise legal use of any land[,] building or structure . . . that does not conform to all of the use regulations of this [ordinance] for the district in which it is located, either on April 15, 1969, or as the result of subsequent amendments."  Montgomery County Zoning Ordinance § 10-47(2).
In this case, the County treated Epperly's use of the one acre for an automobile graveyard as a *lawful* nonconforming use.  See Patton v. City of Galax, 269 Va. 219, 225, 609 S.E.2d 41, 44 (2005) (explaining "lawful nonconforming use" in zoning law).  Such an exception to current zoning regulations is commonly referred to as a "grandfather" exception.  Id. at 227, 609 S.E.2d at 45 (deciding whether use of building as residential apartments was permitted nonconforming use "grandfathered" under zoning ordinance).

[3] The Montgomery County Zoning Ordinance consists of Chapter 10 of the Montgomery County Code.

permit for such expansion. Epperly received a second notice a month later, giving him sixty days to remedy the unlawful expansion of the automobile graveyard.

In March 2002, a criminal summons was issued against Epperly charging him with unlawfully expanding a nonconforming graveyard in violation of § 10-47 of the ordinance. Pursuant to § 10-52(2)(c) of the ordinance, a violation of § 10-47 is a Class 2 misdemeanor punishable by a maximum fine of $1,000. After numerous continuances, the matter was heard in general district court in July 2002, at which time the court granted yet another continuance for twelve months upon Epperly's agreement to remedy the unlawful use within that time period.

In July 2003, after he failed "to clean up the site," Epperly was found guilty by the general district court of violating § 10-47 of the ordinance, as charged. Epperly was fined $1,000, suspended on the condition that he remedy the violation within ninety days. In October 2003, after being notified that "Epperly had done nothing to remedy the illegal expansion," the court revoked the suspension and imposed the $1,000 fine.

Epperly appealed the conviction to circuit court, but then pled guilty to the charge. In the sentencing order, entered in February 2004, the court found Epperly guilty of violating § 10-47 of the ordinance for having unlawfully expanded the one acre nonconforming automobile graveyard located on the Hawley Road Property. The court imposed a mandatory injunction, ordering that Epperly "cease and desist" the unlawful expansion and "have the areas of the property located outside of the nonconforming 1 acre as shown on the County aerial map [attached to the order and made a part thereof] free of any automobiles and other debris not allowed on the property no later than July 1, 2004."

The court also imposed a $300 fine against Epperly, which the court suspended on the condition, in pertinent part, as follows: that he immediately hire a contractor "to crush and remove vehicles and other junk not permitted to be stored [on the unlawfully expanded areas of

the Hawley Road Property]"; that he make "substantial progress towards bringing the property into compliance" no later than April 15, 2004; and that he bring the property in compliance with the ordinance no later than July 1, 2004, "by having all the automobiles, junk and debris removed from the unlawfully expanded areas" on or before that date. Epperly's counsel endorsed the order as "[s]een," stating no objection or exception to it.

After the county advised the court that Epperly had failed to comply with the February 2004 sentencing order, the court issued a rule to show cause, directing Epperly to appear and answer for his noncompliance. Following the show cause hearing, the court entered an order in which it found Epperly in contempt of court for failure to comply with the sentencing order and imposed sanctions; found the ongoing violation of the ordinance to constitute a public nuisance; revoked the suspended sentence; and imposed a $300 fine. As to the sanctions, because Epperly "had nearly three years to bring the property into compliance [from the time he received the first notice of violation]" but "failed to do so," the court granted the following authority to the County, which the court deemed an exercise of its "inherent powers" in fashioning a remedy as punishment for Epperly's contempt: (1) for the County and its "employees, officers, agent and contractors, to enter upon the [Hawley Road Property] . . . for the purpose of removing from said property any and all junk material located [in the unlawfully expanded areas] . . . which, within the discretion of the County, constitutes junk materials the storage of which is prohibited and unlawful under the Montgomery County Code"[4]; (2) to conduct such operation "free and clear of liability for damage or destruction to property, including any environmental liability that may exist or arise on the property owned by [Epperly] or property otherwise located at 3207 Hawley

---

[4] The order specifically provided that such junk material "include[ed], but [was] not limited to inoperable and junk vehicles, vehicle parts, trailers, tires, scrap metal, barrels, junk campers, junk boats [and] junk consumer goods."

- 4 -

Road, Montgomery County, Virginia"[5]; (3) to place a lien upon the Hawley Road Property for costs and expenses the county might incur in the removal operation that were not recovered by the County from that operation; and (4) for the County to collect such costs and expenses "in the same manner as taxes and levies" and to enforce the lien in the same manner as "liens for unpaid local taxes."

## II. ANALYSIS

### A. Court's Authority to Impose Remedial Sanctions for Epperly's Contempt

A court may find a party in contempt for "disobedience or resistance . . . to any lawful process, judgment, decree or order of the court." Code § 18.2-456(5). On appeal, "[a]n adjudication of contempt will be reversed 'only if we find that the court abused its discretion.'" Estate of Hackler v. Hackler, 44 Va. App. 51, 64-65, 602 S.E.2d 426, 433 (2004) (quoting Barnhill v. Brooks, 15 Va. App. 696, 704, 427 S.E.2d 209, 215 (1993)).

In this case, Epperly was found in contempt of court for his failure to comply with the court's injunction that was set forth in the earlier sentencing order. That order mandated that Epperly abate the zoning violation, for which he was convicted, by removing the vehicles and "other junk" not permitted to be stored on the unlawfully expanded areas of the automobile graveyard. On appeal, Epperly does not challenge the court's authority to impose the mandatory injunction at the time of and as a part of his sentencing. Nor does he challenge the court's authority to find him in contempt for his noncompliance, or to impose the $300 fine, which had been imposed and then suspended at sentencing, conditioned upon Epperly taking the prescribed steps to abate the violation within the time set by the court (a period of over four months).

---

[5] While it does not appear in either the sentencing order or the contempt order that the trial court made an unequivocal finding as to the owner of the Hawley Road Property, Epperly's counsel conceded at oral argument that Epperly did, in fact, own the property.

Rather, Epperly argues that the court exceeded its authority and violated his rights to due process by imposing sanctions in the form of authorizations to the County: (i) to conduct an operation to abate the zoning violation by removing the unlawfully stored junk materials from the site of the violation; (ii) to do so with immunity from property damage and environmental liability; and (iii) to place a lien on the real property where the junk materials were located. Epperly contends the court had no inherent authority to impose those sanctions, "which are in excess of that which is authorized by law" (referring to the punishment for conviction under § 10-47 of the ordinance). The ordinance violation is a Class 2 misdemeanor, punishable by a maximum fine of $1,000 (and no jail time). Epperly thus argues that he could "only be sanctioned with a fine." He apparently views the court's imposition of the $300 fine in the contempt order as that sanction.[6]

Epperly argues, in effect, that the circuit court was without jurisdiction, in the context of his criminal case involving a zoning violation, to impose remedial sanctions for his contempt of court involving that same violation. This, again, is based on his contention that the court was limited to the punishment set forth in the ordinance for the crime charged--a fine. We disagree.

The sentence and injunction imposed on Epperly in the sentencing order ultimately derive from distinct provisions of a zoning statute, Code § 15.2-2286. That statute is one of the zoning enabling statutes set out in Article 7, Chapter 22 of Title 15.2 of the Code, which permit localities to impose land use restrictions through adoption of zoning ordinances. Subsection (A)(5) of Code § 15.2-2286 expressly authorizes "the imposition of penalties upon conviction of

---

[6] It is not completely clear from the language of the court's contempt order whether the court imposed the $300 fine as a revocation of its initial suspension in the earlier sentencing order because of Epperly's violations of the conditions of suspension, or imposed the $300 fine as a monetary sanction for Epperly's contempt of court. Characterization of that fine, however, makes no difference to our decision in this case. As explained *infra*, sanctions for civil contempt may include both a fine and remedial sanctions, in the court's discretion.

any violation of the zoning ordinance" with "[a]ny such violation [to constitute] a misdemeanor punishable by a fine of not less than $10 nor more than $1,000." Code § 15.2-2286(A)(5). That subsection further provides, "[i]f the violation is uncorrected at the time of the conviction, the court *shall* order the violator to abate or remedy the violation in compliance with the zoning ordinance, within a time period established by the court." Id. (emphasis added). Cf. Code § 36-106 (treating building code violations in exactly the same manner, directing courts to order abatement where a violation remains uncorrected at time of conviction for such violation).

Having issued a valid mandatory injunction against Epperly in the sentencing order (which injunction Epperly did not object to at the trial level, nor on appeal), the court clearly had the inherent, discretionary authority to fashion reasonable remedial sanctions as punishment after finding him in contempt for failing to comply with the injunction. "'The power of the court to punish for contempt can no longer be challenged.'" Robinson v. Commonwealth, 41 Va. App. 137, 145, 583 S.E.2d 60, 64 (2003) (quoting Holt v. Commonwealth, 205 Va. 332, 336-37, 136 S.E.2d 809, 813 (1964), rev'd on other grounds, 381 U.S. 131 (1965)). This power is "inherent in, and as ancient as, courts themselves. It is essential to the proper administration of the law, to enable courts to enforce their orders, judgments and decrees, and to preserve the confidence and respect of the people without which the rights of the people cannot be maintained and enforced." Estate of Hackler, 44 Va. App. at 64, 602 S.E.2d at 432 (quoting Carter v. Commonwealth, 2 Va. App. 392, 395, 345 S.E.2d 5, 7 (1986)); see French v. Clintwood, 203 Va. 562, 569, 125 S.E.2d 798, 802 (1962) ("It is well settled that a court . . . is invested with power to punish for contempt in the disobedience of its orders and decrees, both by the inherent nature and constitution of a court, and by statute in Virginia.").

The inherent power of the court to punish for contempt is discretionary. "Upon a finding of contempt, a trial judge has discretionary power to enforce decrees of the court." Estate of

Hackler, 44 Va. App. at 64, 602 S.E.2d at 432 (citing Code § 18.2-456). This includes the power, in the court's "'sound discretion,'" to determine the "'degree of punishment.'" Id. at 64, 602 S.E.2d at 432-33 (quoting Local 333B, United Marine Div. v. Commonwealth, 193 Va. 773, 786, 71 S.E.2d 159, 167 (1952)). Such punishment may be in the form of either civil or criminal sanctions, or both. Small v. Commonwealth, 12 Va. App. 314, 317, 398 S.E.2d 98, 100 (1990) (stating that for contempt, "both criminal and civil sanctions may be imposed as a result of the same conduct" (citing United States v. Halper, 490 U.S. 435, 443 (1989))). "[I]t is not the 'fact of punishment but rather its character and purpose' that distinguishes civil and criminal contempt." Id. (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 441 (1911)). "The punishment for civil contempt," as in the instant case, "is remedial and for the benefit of the injured party. The punishment for criminal contempt, however, is punitive, 'to vindicate the authority of the court.'" Id.

The scope of civil contempt sanctions is not limited to a fine and/or imprisonment. Rainey v. City of Norfolk, 14 Va. App. 968, 974, 421 S.E.2d 210, 214 (1992). Instead, "[t]he punishment in a civil contempt proceeding 'is adapted to what is necessary to afford the injured party remedial relief for the injury or damage done by the violation of the injunction to his property or rights which were under the protection of the injunction.'" Id. (quoting Deeds v. Gilmer, 162 Va. 157, 262, 174 S.E. 37, 78-79 (1934)). Thus, as this Court explained in Rainey, examples of appropriate sanctions in this context include:

> a fine or imprisonment, Leisge [v. Leisge], 224 Va. [303,] 308, 296 S.E.2d [538,] 541 [(1982)], removal or alteration of improvements constructed pursuant to a mistakenly issued building permit, Segaloff v. City of Newport News, 209 Va. 259, 261-62, 163 S.E.2d 135, 137 (1968), ordering the owner of a building not in compliance with building code to turn over his keys and submit to an inspection or have the building demolished for his failure to purge himself of contempt, Borozny v. Paine, 122 R.I. 701, 705-06, 411 A.2d 304, 307 (1980), and ordering occupants to vacate buildings that do not comply with applicable building

- 8 -

regulations, <u>Lanski v. American National Bank & Trust Co.</u>, 122 Ill. App. 3d 729, 731-32, 462 N.E.2d 607, 609-10 (1984), or zoning ordinances, <u>City of Long Beach v. California Lambda Chapter of Sigma Alpha Epsilon</u>, 255 Cal. App. 2d 789, 797, 63 Cal. Rptr. 419, 424 (1967).

<u>Id.</u> at 974-75, 421 S.E.2d at 214.

The decision in <u>Rainey</u> presents another example of appropriate remedial sanctions. There, in an injunction suit brought by the City of Norfolk, the trial court ordered a homeowner to bring his residence into compliance with the state and city building codes. When the homeowner failed to comply, the court held him in civil contempt. In imposing sanctions, the court authorized the City or its contractors to enter upon the homeowner's property to determine the repairs required to comply with the building code, to bid the job, and to complete the necessary repair work. The decree also enjoined the homeowner to vacate the premises while the repairs were being performed. The court further indicated that, as part of the sanctions, it would enter a personal judgment against the homeowner for the cost of repairs after the work was completed. <u>Id.</u> at 970, 421 S.E.2d at 211-12. On appeal, the landowner argued that the sanctions exceeded the permissible scope for civil sanctions. Affirming the trial court, this Court found the sanctions did "no more than what was necessary to compel [the homeowner] to comply with the code and to protect the City's rights, which the initial injunction was designed to accomplish." <u>Id.</u> at 975, 421 S.E.2d at 214. We therefore held that the sanctions imposed were a reasonable exercise of the trial court's discretion "to remediate the wrong occasioned by [the homeowner's] violation of the injunction." <u>Id.</u> at 975, 421 S.E.2d at 215.

B. Epperly's Waiver of Challenge to Reasonableness of Actual Sanctions Imposed

Given that the court in the instant case had the inherent authority to impose remedial sanctions against Epperly for his contempt and was not limited to imposing a fine, we turn to the issue of whether the court reasonably exercised its discretion in specifically fashioning such

sanctions on the facts here presented.  Epperly did not raise this issue as a question presented, nor develop any argument on it in his opening brief, other than his bare assertion that the sanctions violated his rights to due process.  We, therefore, decline to address the issue finding it waived under Rule 5A:20(c) and (e).  See Rule 5A:20(c) (requiring appellant's opening brief to include, *inter alia*, a statement of the questions presented); Rule 5A:20(e) (requiring appellant's opening brief to include the "principles of law, the argument, and the authorities relating to each question presented"); see also Budnick v. Budnick, 42 Va. App. 823, 833, 595 S.E.2d 50, 55 (2004) ("'Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.'" (quoting Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003))).

### III. CONCLUSION

Accordingly, we affirm the court's contempt order, including its imposition of remedial sanctions against Epperly for contempt of court.

Affirmed.

- 10 -