COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Beales
Argued at Alexandria, Virginia


REFFAT K. ABOFREKA, M.D.

MEMORANDUM OPINION* BY
v.        Record No. 2793-06-4          JUDGE JAMES W. BENTON, JR.
                                        AUGUST 14, 2007
VIRGINIA BOARD OF MEDICINE


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
R. Terrance Ney, Judge

Richard E. Gardiner for appellant.

Howard M. Casway, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General; David E. Johnson, Deputy Attorney
General; Jane D. Hickey, Senior Assistant Attorney General, on
brief), for appellee.


        The Virginia Board of Medicine indefinitely suspended the medical license of Reffat K.

Abofreka, M.D., for a period of not less than eighteen months.  Dr. Abofreka contends the trial

judge erred in affirming the suspension order and argues that (i) three of the Board's seven

conclusions of law were improper applications of statutory law because they were not supported by

the findings of fact the Board specifically identified as the basis for those conclusions; (ii) the judge

could not, as a matter of law, consider findings of fact other than those expressly identified by the

Board as supporting its conclusions; (iii) several of the Board's findings of fact were not supported

by substantial evidence; and (iv) the Board's withdrawal of one of its conclusions of law and a

portion of another necessitated a remand to the Board for further proceedings.  For the reasons that

follow, we affirm the judgment.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

In March 2006, the Board received an investigative report from the Enforcement Division of the Department of Health Professions alleging Dr. Abofreka made an error which caused him to cease a procedure for the termination of pregnancy of a patient. After considering this report and prior reports of inadequate prenatal care by Dr. Abofreka, the Board summarily suspended his medical license and instituted proceedings for an administrative hearing. See Code § 54.1-2408.1. The following month, a panel of the Board held a formal evidentiary hearing and received testimony from several expert witnesses addressing Dr. Abofreka's practices and procedures concerning "Patient A," "Patient B," and "Patient C." Dr. Abofreka offered his own expert witness and also testified on his own behalf.

On May 23, 2006, the Board entered an order, which included sixteen Findings of Fact, some of which contained subparts, and eight Conclusions of Law. Each Conclusion of Law specifically referred to one or more findings and identified the applicable statute or regulation violated. The Board indefinitely suspended Dr. Abofreka's medical license for not less than eighteen months from the date of entry of its order.

Dr. Abofreka filed a petition for appeal seeking a review in the circuit court. In the petition, he challenged five of the Board's Conclusions of Law (1, 2, 3, 6, and 8), and he argued those Conclusions of Law are "either not supported by the facts found by the Board and are not in compliance with statutory authority as the Board has not properly applied the law to those facts, or are not supported by substantial evidence." The Board denied each of the petition's allegations but acknowledged the order contained "no Finding of Fact No. 5f," which the Board had identified in its order as support for Conclusion of Law No. 8. In a later pleading, the Board "concede[d] . . . there was no Finding of Fact 5f in the Board's order and therefore there is no violation of law" to support Conclusion of Law No. 8. The Board also acknowledged that

Conclusion of Law No. 3 mistakenly referenced Code § 54.1-2915(A)(18) when it stated "Finding of Fact No. 5 constitutes a violation of [Code §§] 54.1-2915(A)(17) and (18) . . . and . . . 54.1-3404.B." In its pleading, the Board asserted that these two "withdrawal[s]" represented harmless error.

The record does not contain a transcript of the hearing in the circuit court or a statement of facts and other incidents of the case. See Rule 5A:8. At the conclusion of a hearing, the trial judge entered an order affirming the Board's order. The judge ruled that (i) the record contained substantial evidence to support the Board's findings of fact, (ii) the findings of fact fully supported six of the conclusions of law, (iii) the findings of fact supported Conclusion of Law No. 3 "with the exception of . . . a violation of . . . Code § 54.1-2915(A)(18)," and (iv) Conclusion of Law No. 8 was not supported because there was no Finding of Fact No. 5(f). In accordance with "the Board's agreement," the trial judge directed the Board "to amend its May 23, 2006 order . . . by withdrawing Findings of Fact 5(a) and 5(f) as violations of . . . Code § 54.1-2915(A)(18)." The judge ruled that these withdrawals "constitut[ed] harmless error." On November 6, 2006, the Board entered an amended order in accordance with the trial judge's order. This appeal followed.

II.

We begin by reviewing some basic principles. The Board of Medicine is an administrative agency and is authorized to suspend a doctor's license for a specific period or indefinitely for "unprofessional conduct." Code § 54.1-2915(A). When the Board conducts hearings "to determine whether to revoke or suspend a doctor's license . . . [, those proceedings] are subject to the provisions of the Virginia Administrative Process Act." Goad v. Virginia Bd. of Medicine, 40 Va. App. 621, 633, 580 S.E.2d 494, 500 (2003). Under the Act, the doctor whose license has been suspended bears the burden of proving the administrative agency

committed an error of law. Code § 2.2-4027. "Errors of law" fall into one of two categories: they either concern the substantiality of the evidence to support the agency decision or the scope of the agency's authority to make a decision. See id.; Johnston-Willis Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988).

> The "substantial evidence" standard . . . is designed to give great stability and finality to the fact-findings of an administrative agency. The phrase "substantial evidence" refers to "such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion." Under this standard, applicable here, the court may reject the agency's findings of fact "only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion."

Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) (citations omitted). Even when supported by substantial evidence, agency actions may be reversed if, on review, the record reveals a failure to follow required procedure or to comply with statutory authority. Johnston-Willis, 6 Va. App. at 243, 369 S.E.2d at 7.

"On appeal of an agency's determination on issues of law, "'[i]f the issue falls outside the area generally entrusted to the agency, and is one in which the courts have special competence, i.e., the common law or constitutional law,'" the court need not defer to the agency's interpretation." Evelyn v. Commonwealth, 46 Va. App. 618, 624, 621 S.E.2d 130, 133 (2005) (quoting Johnston-Willis, 6 Va. App. at 243-44, 369 S.E.2d at 8). Thus, the agency's "basic law . . . and the purposes of the law are crucial to the determination of a reviewing court." Id. at 244, 369 S.E.2d at 8. This is so because, "where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts." Id. Furthermore, when issues are raised on appeal concerning mixed questions of fact and law, we have held as follows:

> Interrelated factual and legal issues must be considered together in the context of the entire record, with each examined under the appropriate standard of review. The court may then discharge its statutory duty and "determine . . . whether the result reached . . . could reasonably be said, . . . to be within the scope of the legal authority of the agency."

Environmental Defense Fund, Inc. v. Virginia State Water Control Bd., 15 Va. App. 271, 279, 422 S.E.2d 608, 612 (1992) (quoting Johnston-Willis, 6 Va. App. at 243, 369 S.E.2d at 7-8).

III.

Dr. Abofreka presents six questions for consideration on appeal. The Commonwealth contends the issues raised by these questions were not properly preserved for appeal. Because the Commonwealth's contention bears merit for some issues, we address each question presented in turn.

> Additionally, in accordance with familiar principles of appellate review, "we review the facts in the light most favorable to sustaining the Board's action," and "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted" . . . .

Goad, 40 Va. App. at 634, 580 S.E.2d at 501 (quoting Atkinson v. Virginia Alcohol Beverage Control Comm'n, 1 Va. App. 172, 176, 336 S.E.2d 527, 530 (1985), and Code § 2.2-4027).

### Findings of Fact

Initially, we note that Dr. Abofreka raises as a question presented "[w]hether Findings of Fact 2-4, 5d, 6-14, and 16 are supported by substantial evidence in the record." To satisfy the requirement of Rule 5A:20, that the appellant make "a clear and exact reference to the page(s) of the . . . record . . . where each question was preserved in the trial court," Dr. Abofreka refers to the trial judge's final order. That order indicates, however, Dr. Abofreka's attorney endorsed it "seen and objected to," without any specific objections.

This objection to the order is insufficient to preserve this issue for appeal.  Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991) (holding that "neither the Code nor Rule 5A:18 is complied with merely by objecting generally to an order[; thus,] it follows that a statement that an order is 'seen and objected to' must also be insufficient").  Furthermore, this issue was not raised in the petition for appeal to the circuit court and does not appear immediately obvious in the pleadings in the circuit court.  In other similar appeals, we have held:

> [Appellant] did not comply with Rule 5A:20(c) which requires, in the opening brief, "a statement of the questions presented with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each question was preserved in the trial court."  [Appellant] only referred to objections stated in four particular hearings without making reference to "the page(s) of the transcript . . . record or appendix where each question was preserved in the trial court."  "[W]e will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief."  Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

Barrs v. Barrs, 45 Va. App. 500, 512, 612 S.E.2d 227, 232-33 (2005).  See also Courembis v. Courembis, 43 Va. App. 18, 25-26, 595 S.E.2d 505, 509 (2004).  We have no indication Dr. Abofreka preserved these issues under Rule 5A:18; therefore, we will not consider them on appeal.[1]

### Conclusion of Law No. 1

Dr. Abofreka contends "the Board's Conclusion of Law 1 is, as a matter of law, an improper application of Code § 54.1-2915(A)(3), (6), and (13)."  This issue was raised by the petition for appeal in the circuit court and in the trial memorandum.

---

[1] Though Dr. Abofreka did raise in his trial memorandum and questions presented on appeal the issue of substantial evidence in the record to support Finding of Fact 5(d), he failed to develop any argument on the issue in his opening brief.  We therefore decline to address the issue under Rule 5A:20(e).  See also Epperly v. County of Montgomery, 46 Va. App. 546, 557-58, 620 S.E.2d 125, 131 (2005).

- 6 -

Conclusion of Law No. 1 states: "Finding of Fact No. 2 constitutes a violation of [Code § 54.1-2915(A)(3), (6), and (13) . . . ." The Board's Finding of Fact No. 2 is as follows:

> On or about January 9, 2006, Patient A presented to Dr. Abofreka's office for termination of pregnancy. Without performing diagnostic tests to ascertain the gestational age of the fetus, and instead relying on a bimanual pelvic examination that he believed showed a 12-week fetus, Dr. Abofreka began a termination procedure on Patient A. After applying suction several times, Dr. Abofreka realized that the pregnancy was greater than the 12-weeks gestation he estimated on examination. He stopped the procedure and performed a sonogram, which showed the gestational age was approximately 24-weeks, requiring such procedure be performed in a hospital. Dr. Abofreka instructed the patient to proceed directly to Alexandria Hospital, where the gestational age of 23.2 weeks was confirmed by sonogram. The fetus was delivered, but failed to survive.

Code § 54.1-2915(A)(3), (6), and (13) provide that the following acts constitute unprofessional conduct:

> 3. Intentional or negligent conduct in the practice of any branch of the healing arts that causes or is likely to cause injury to a patient or patients;
>
> \* \* \* \* \* \* \*
>
> 6. Undertaking in any manner or by any means whatsoever to procure or perform or aid or abet in procuring or performing a criminal abortion;
>
> \* \* \* \* \* \* \*
>
> 13. Conducting his practice in such a manner as to be a danger to the health and welfare of his patients or to the public.

Dr. Abofreka argues nothing in Finding of Fact No. 2 supports the conclusions that he caused or was likely to cause injury to Patient A, that he performed a criminal abortion, or that his conduct posed a danger to Patient A or any other person. Dr. Abofreka also argues that on review, "the only facts which the court may consider in determining whether [he] violated Code § 54.1-2915(A)(3), (6), and (13) with respect to Patient A are the facts in Finding of Fact 2

- 7 -

because those are the only facts upon which the Board explicitly relied." He further argues the trial judge could not rely upon the Board's interpretation of the statute.

The Board responds that substantial evidence supports the findings and conclusions, that the Findings of Fact Nos. 6-9 and 14 adopted by the Board "provide corroboration in support of Finding of Fact 2 as a violation of Va. Code § 54.1-2915(A)(3), (6), and (13)," and that the record supports the trial judge's rulings.

The Board's order includes the following Findings of Fact Nos. 6-9 and 14, which specifically refer to Patient A:

> 6. In his office note for Patient A on January 9, 2006, Dr. Abofreka documented a question mark by the date of the patient's last menstrual period and noted that her period had been shorter in duration than normal.
>
> 7. Thomas E. Burns, III, M.D., a board-certified Obstetrician/Gynecologist, was accepted by the Board as an expert witness. He testified that in order to estimate gestational age when there is uncertainty concerning a patient's last menstrual period, further study is indicated, to include a sonogram. He testified that a bimanual examination is not accurate if the patient's bladder is full or if the patient is past the first trimester of pregnancy, and that a pregnancy believed to be close to twelve weeks should be confirmed by sonogram prior to initiating a termination procedure.
>
> 8. Dr. Burns testified that an experienced physician performing a bimanual examination on a patient of similar size to Patient A should be able to accurately estimate gestational age within a two-week margin of error. He further described many physical differences found in a patient with a pregnancy of twelve weeks and one of twenty-four weeks.
>
> 9. Dr. Burns stated that Dr. Abofreka's treatment of Patient A constituted an egregious departure from accepted standards of care.
>
> \* \* \* \* \* \* \*
>
> 14. Julius Piver, M.D., a board-certified Obstetrician/Gynecologist, was qualified as an expert witness and testified on behalf of Dr. Abofreka concerning Patients A and C. He testified that a sonogram is not always required to establish gestational age if there is no discrepancy between the patient's reported last menstrual period and the size of the uterus. However,

- 8 -

he further testified that if there is uncertainty about dates, he would perform a sonogram; if a patient had a full bladder, he would have it emptied; and that he "absolutely" would take extra precautions prior to terminating a pregnancy estimated to be 12 weeks.

Under the Administrative Process Act, the role of the trial judge in an appeal from an agency decision is equivalent to the role of the appellate court in an appeal from a trial court. J.P. v. Carter, 24 Va. App. 707, 721, 485 S.E.2d 162, 169 (1997). In a review of agency action, the trial judge has the authority to consider the entire record to determine whether the agency properly applied the law to the facts of the case. "Proper judicial review of the Board's action must not be restricted . . . , but must encompass 'all . . . proofs' found within the entire record." Environmental Defense Fund, Inc., 15 Va. App. at 279, 422 S.E.2d at 612 (quoting former Code § 9-6.14:17); see also Roanoke Memorial Hospitals v. Kenley, 3 Va. App. 599, 609, 352 S.E.2d 525, 531 (1987).

Dr. Abofreka argues, however, the trial judge could not uphold Conclusion of Law No. 1 by referring to other findings of fact in the Board's order because the Board did not expressly rely upon them in reaching this conclusion. In support of this argument, he cites Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194 (1947), and Goad, 40 Va. App. 621, 580 S.E.2d 494. We conclude that both cases are distinguishable from this case.

In Chenery, the United States Supreme Court refused to affirm the administrative agency's order approving an amended reorganization plan because the only grounds upon which the agency had clearly based its decision were insufficient as a matter of law. The Court held that a reviewing court must judge the propriety of an agency's action based solely on the grounds invoked by the agency. 332 U.S. at 198. See also First Virginia Bank v. Commonwealth, 213 Va. 349, 351, 193 S.E.2d 4, 5-6 (1972) (citing Chenery and holding, "[e]ven where the [agency] has reached the right result for the wrong reason, its decision, unlike that of a trial court, will not be permitted to stand").

In Goad, we rejected the Board's attempt to support its decision by assigning to it certain "conclusions," "determinations," and "findings" where the record did not establish the Board made such conclusions, determinations or findings. 40 Va. App. at 637, 580 S.E.2d at 502. We did not cite Chenery, but the reasoning is analogous.

Unlike in Chenery and Goad, the Board in this case specifically expressed its findings in sixteen separately enumerated "Findings of Fact." In considering the Board's action, the trial judge did not have to speculate about the Board's findings and was not called upon to substitute his views for the Board's discretionary judgment. Findings of Fact Nos. 6-9 and 14 directly relate to the circumstances chronologically stated in Finding of Fact No. 2. Those findings specifically pertain to Patient A, explain the circumstances underlying Finding of Fact No. 2, and corroborate Finding of Fact No. 2. The Board's designation of these facts as "Findings of Fact" clearly indicate the Board relied on them in reaching its conclusions of law. Although the Board's procedure of specifically citing only certain findings of fact within each conclusion of law is puzzling and may prove to be ill advised in other cases, we cannot say in this case that the chosen method was prejudicial to Dr. Abofreka or constituted error. We hold that here, where the Board's order contains express findings of fact that are germane to specific patients and that directly corroborate and explain the grounds upon which the Board expressly relied, the trial judge could consider the corroborative findings to determine whether the Board's conclusions are supported by the findings expressly relied upon. See Environmental Defense Fund, Inc., 15 Va. App. at 279, 422 S.E.2d at 612 (holding that the trial judge was entitled to consider the entire record, including findings of facts found by the agency, in determining whether the agency's ruling was "within the scope of the legal authority"). Thus, the trial judge did not err in considering Findings of Fact Nos. 6-9 and 14 to determine whether the Board's Conclusion of Law No. 1 was supported by substantial evidence.

It is within the Board's "expert discretion" to evaluate whether intentional conduct engaged in by a medical professional is injurious or otherwise dangerous according to the standards promulgated by the Board. See Johnston-Willis, 6 Va. App. at 244, 360 S.E.2d at 8 (discussing an agency's experience and specialized competence). The record supports the trial judge's ruling that the Board's Findings of Fact support its conclusion that Dr. Abofreka's intentional or negligent conduct was likely to cause injury to a patient, Code § 54.1-2915(A)(3), and that his care of Patient A constituted practice in such a manner that Patient A was endangered by the conduct of Dr. Abofreka, Code § 54.1-2915(A)(13).

Whether the findings of fact support the conclusion Dr. Abofreka performed a "criminal abortion" is a legal issue that we review *de novo*. Code § 18.2-71 defines a "criminal abortion" as one in which the performer "use[s] means, with intent to destroy [a woman's] unborn child, or to produce abortion or miscarriage, and thereby destroy such child, or produce such abortion or miscarriage." The Board found that Dr. Abofreka failed to perform standard "diagnostic tests to ascertain the gestational age of the fetus, and instead rel[ied] on a bimanual pelvic examination." He applied "suction several times [before he] realized that the pregnancy was greater than the 12-weeks gestation he estimated on examination." Before performing the procedure, Dr. Abofreka had grossly underestimated the gestational age of the fetus. The gestational age of the fetus was approximately 24 weeks, which required the procedure to be performed in a hospital. Code § 18.2-73; see also Simopoulos v. Virginia, 462 U.S. 506 (1983) (upholding Virginia's statute imposing criminal liability for performing second-trimester abortions outside a hospital). In short, the factual findings reveal Dr. Abofreka performed the termination procedure in his office on Patient A at twenty-four weeks gestation, or the second trimester of pregnancy, and therefore he performed an unlawful abortion. These factual findings, when coupled with the other factual findings that were based upon expert testimony, establish that the Board properly

concluded Dr. Abofreka performed a second-trimester abortion in violation of Code § 54.1-2915(A)(6).

We hold, therefore, the trial judge properly upheld the Board's conclusion that Dr. Abofreka violated Code § 54.1-2915(A)(3), (6), and (13) by his conduct with Patient A.

<u>Conclusion of Law No. 2</u>

Dr. Abofreka contends "Conclusion of Law 2 is, as a matter of law, an improper application of Code § 54.1-2915(A)(3) and (13)." He argues Findings of Fact Nos. 3 and 4, upon which the Board expressly relied, do not support the conclusion that he caused or was likely to cause injury to Patient B or that his conduct constituted a danger to the health and welfare of Patient B. This issue was preserved in Dr. Abofreka's petition for appeal and trial memorandum.

In Findings of Fact Nos. 3 and 4, the Board found as follows:

> 3. Dr. Abofreka failed to properly care for Patient B during her pregnancy or to transfer her to an appropriate healthcare provider. Specifically:
>
>> a. Patient B presented to Dr. Abofreka on or about August 23, 2004, reporting possible pregnancy. At that time he did not conduct standard testing to confirm pregnancy; instead he performed a vaginal sonogram. Dr. Abofreka noted in the patient's chart that he advised the patient that he does not deliver babies, does not do prenatal care, and only does sonograms and blood testing. After confirming pregnancy, he did not adequately refer the patient to an obstetrician on this visit.
>>
>> b. Patient B presented to Dr. Abofreka on or about September 20, 2004, at which time he drew a blood sample, which was subsequently analyzed by LabCrop and returned as a "Prenatal Profile I." Dr. Abofreka also performed a vaginal examination and noted that there were no signs of infection. He did not provide adequate prenatal or obstetrical care at that time, nor did he adequately refer the patient to an obstetrician on this visit.
>>
>> c. Patient B presented to Dr. Abofreka on or about October 18, 2004, November 16, 2004, December 14, 2004, January 11, 2005, and February 15, 2005, during which visits he

- 12 -

sometimes took the patient's blood pressure and performed an abdominal ultrasound (sonogram), and recorded the gestational age and developmental stage of the fetus in the patient's records. Dr. Abofreka did not provide any further prenatal or obstetrical care at these visits, nor did he adequately refer the patient to an obstetrician.

d. Patient B presented to Dr. Abofreka on or about March 1, 2005, complaining of infection. Dr. Abofreka performed a vaginal examination and noted that there were no signs of infection, and that no treatment was given. Despite her advanced stage of pregnancy, he did not provide any further prenatal or obstetrical care at this visit, nor did he adequately refer the patient to an obstetrician.

e. When Patient B presented to the Prince William Hospital Emergency Room on or about March 6, 2005 for labor and delivery, she informed the doctors present there that Dr. Abofreka was her physician.

4. Dr. Abofreka performed abdominal ultrasounds (sonograms) on Patient B every month of her pregnancy from on or about October 2004 through on or about February 2005, without medical or therapeutic purpose.

In its Conclusion of Law No. 2, the Board stated: "Findings of Facts Nos. 3 and 4 constitute violations of [Code §] 54.1-2915(A)(3) and (13)." These code sections, which were also cited in Conclusion of Law No. 1, proscribe as "unprofessional conduct . . . [i]ntentional or negligent conduct . . . that causes or is likely to cause injury to a patient . . . [and] [c]onducting . . . practice in such a manner as to be a danger to the health and welfare of his patients or to the public." Code § 54.1-2915(A)(3), (13).

Although not specifically referenced in Conclusion of Law No. 2, the Board also made Findings of Fact Nos. 10-12 and 16, which relate to Patient B. These findings are as follows:

10. John Douglas Wall, M.D., a board-certified Obstetrician/Gynecologist, was accepted by the Board as an expert witness and testified concerning his interaction with Patient B when she presented in labor at Prince William Hospital. Upon her arrival at Prince William Hospital, Patient B presented Dr. Abofreka's card and requested that he be called. Dr. Wall testified that Patient B had the understanding and expectation that Dr. Abofreka was to deliver her baby.

- 13 -

11.  Dr. Wall testified concerning the treatment rendered by Dr. Abofreka to Patient B during her pregnancy.  He stated that Dr. Abofreka's records for Patient B contained no evidence of the usual standard of prenatal care.  He opined that Dr. Abofreka's "statement/agreement" signed by Patient B indicating that Dr. Abofreka was merely acting as a "technician" in performing sonograms on Patient B was not supported by the medical records wherein Dr. Abofreka provided interpretation of the sonograms.  He further testified that Dr. Abofreka was responsible for interpreting the "Prenatal Profile I" laboratory values ordered for Patient B on September 20, 2004, or should have referred the results to another physician for interpretation.

12.  John Gonzales, M.D., a board-certified Obstetrician/Gynecologist, was qualified as an expert and testified concerning his treatment of Patient B at Prince William Hospital.  He stated that Patient B did not receive proper prenatal care prior to her presentation at Prince William Hospital, and that her baby remained in the hospital for 48-hours to ensure that it was not septic because Patient B was not tested for Group B strep prior to delivery.

\*    \*    \*    \*    \*    \*    \*

16.  Jennifer Uzeda, Dr. Abofreka's receptionist since approximately June 2004, provided testimony to the Board concerning Dr. Abofreka's office routine.  She testified that patients who are pregnant are told that they need to find a physician who provides obstetric care, that the patient would sign a form in this regard, and that no further appointments would be made.  Said testimony is at variance with the appointment log provided to the Board by Dr. Abofreka indicating that Patient B presented for care approximately monthly.  The Board does not find Ms. Uzeda's testimony that Patient B was a "walk in" patient each time she presented to the office, or that Patient B was provided sonograms solely at the patient's request, to be credible.  Further, the reasons for Patient B's presentation at Dr. Abofreka's office documented in the appointment log are not documented in the patient's medical record for many patient visits.

As we previously explained, although the Board's procedure of referring only to selective findings of fact is puzzling, these Findings of Fact Nos. 10, 11, 12, and 16 undisputedly elucidate the chronological recitations concerning Patient B, as contained in Findings of Fact Nos. 3 and 4, and corroborate those findings.  Matters concerning a physician's conduct as injurious or

- 14 -

dangerous are within the expertise of the Board. Further, the trial judge was authorized to consider other corroborative findings germane to Patient B, including those detailing the expert testimony of other doctors, that support the findings relied upon by the Board. We again accord deference to the Board's factual findings because of its experience and specialized competence. In so doing, we hold the trial judge did not err in ruling Conclusion of Law No. 2 was based on substantial evidence and factual findings and was not an improper application of Code § 54.1-2915(A)(3) and (13).

Conclusion of Law No. 6

Dr. Abofreka contends, as he did in his petition to the circuit court, that the Board's "Conclusion of Law 6 is, as a matter of law, an improper application of Code § 54.1-2915(A)(18) and 18 VAC 85-20-350." He argues Finding of Fact No. 5(d) does not support this conclusion.

Finding of Fact No. 5(d) is as follows:

> 5. Due to his practice of office-based anesthesia, an unannounced inspection of Dr. Abofreka's practice was performed on or about June 14, 2005, with follow up visits on or about June 23, 2005 and July 14, 2005. It was found that:
>
> \* \* \* \* \* \* \*
>
> d. Dr. Abofreka's informed consent form for patients did not contain information about the nature and objectives of the anesthesia planned for the patient, to include benefits, risks, expected outcomes and alternatives.

Conclusion of Law 6 states: "Finding of Fact No. 5.d constitutes a violation of [Code §] 54.1-2915(A)(18) . . . and Section 18 VAC 85-20-350 of the Regulations of the Board." The statute authorizes the Board to revoke the license of a medical professional for "violating . . . any of the . . . regulations of the Board." Code § 54.1-2915(A)(18). Section 18 VAC 85-20-350 is a

regulation of the Board that governs the procedure for obtaining and documenting a patient's informed consent for the use of office-based anesthesia. In pertinent part, it provides as follows:

> Informed consent for the nature and objectives of the anesthesia planned shall be in writing and obtained from the patient or responsible party before the procedure is performed. Informed consent shall only be obtained after a discussion of the risks, benefits, and alternatives, contain the name of the anesthesia provider and be documented in the medical record.

Specifically, Dr. Abofreka argues the "plain language of 18 VAC 85-20-350 . . . does not require that the discussion of the risks, benefits and alternatives be documented in a particular way, such as on a physician's informed consent form" and "does not require the informed consent form to include information concerning 'expected outcomes.'" Thus, he reasons, he did not violate the Board regulation by failing to comport with these "requirements." The Board responds that these arguments are without merit. We agree with the Board.

Dr. Abofreka essentially challenges the Board's interpretation of its regulation. Whether a medical professional has violated a Board regulation, however, is a matter within the experience and specialized competence of the Board. "The construction which an administrative agency gives to its regulation, if reasonable, is entitled to great deference." Virginia Real Estate Board v. Clay, 9 Va. App. 152, 160, 384 S.E.2d 622, 627 (1989) (holding that "the trial court erred in its interpretation of Regulation 8.2(36) by substituting its construction of the regulation for the Board's reasonable interpretation . . . [and] by failing to defer to the experience and specialized competence of the Board in interpreting the regulation which it promulgated"). In other words, when an issue "involves the specialized competence of an agency in construing and applying its regulations, we are bound by the agency's decision unless the decision is arbitrary and capricious." Smith v. Liberty Nursing Home, Inc., 31 Va. App. 281, 294, 522 S.E.2d 890, 896 (2000). See also Jackson v. W, 14 Va. App. 391, 401, 419 S.E.2d 385, 390-91 (1992) (holding that we will accord great deference to the interpretation which an administrative agency

- 16 -

gives its guidelines and will reverse the agency's construction of its guidelines only if it is "arbitrary or capricious or fails to fulfill the agency's purpose as defined by its basic law").

Dr. Abofreka does not challenge the Board's conclusion as arbitrary or capricious. We hold that it was not. The finding and conclusion are based on a plain application of the regulation. The Board's application of its regulation and its conclusion are supported by Finding of Fact No. 5(d). Because Conclusion of Law No. 6 is supported by Finding of Fact No. 5(d), we hold the trial judge did not err in deferring to the Board in this matter.

Remand

Dr. Abofreka contends the trial judge erred in failing to remand the entire matter to the Board for further proceedings after the Board partially withdrew Conclusion of Law No. 3 and completely withdrew Conclusion of Law No. 8. He argues the trial judge "should have found, at a minimum, in light of the Board's concessions, that the decision of the Board was not in accordance with the law." The Board contends, however, that because the trial judge ruled the Board's decision was in accordance with law as required by Code § 2.2-4027, a remand is not required. The Board further contends that the withdrawn findings of fact "had no significant impact . . . which would undermine the 'substantiality of the evidential support for the [Board's] factual findings' and determined by the [judge]." Dr. Abofreka replies that "harmless error" analysis does not apply because he did not challenge the order of the Board on procedural grounds.

Code § 2.2-4029, which prescribes the acceptable dispositions of an administrative case following judicial review, provides in pertinent part, as follows:

> Where a regulation or case decision is found by the court not to be in accordance with law under § 2.2-4027, the court shall suspend or set it aside and remand the matter to the agency for further proceedings, if any, as the court may permit or direct in accordance with law.

Further, Code § 2.2-4027 provides that errors of law that a court may identify upon review include "compliance with statutory authority . . . and the factual showing respecting violations . . . ."

Here, the trial judge held "the findings of fact amply support Conclusions of Law 1, 2, 4, 5, 6, 7 and 3 with the exception of Finding of Fact 5(a) as a violation of . . . Code § 54.1-2915(A)(18) and Finding of Fact 5(f) as a violation of . . . Code § 54.1-2915(A)(18)." The trial judge further ruled the exceptions "constitut[ed] harmless error." He directed the Board to amend its order to partially withdraw Conclusion of Law No. 3, to completely withdraw Conclusion of Law No. 8, and to enter the amended order *nunc pro tunc* to the date of the entry of the original order.

The record does not contain a transcript of the circuit court hearing. Beyond the assertions of the parties, there is nothing in the record to indicate the basis for the judge's ruling on this point or the positions of the parties at the hearing regarding this point. This Court has held that "an appellant has the primary responsibility of ensuring that a complete record is furnished to an appellate court so that the errors assigned may be decided properly." Ferguson v. Commonwealth, 10 Va. App. 189, 194, 390 S.E.2d 782, 785, aff'd in part, rev'd in part, 240 Va. ix, 396 S.E.2d 675 (1990).

Absent the transcript, we are unable to know what occurred that may amplify the judge's ruling regarding "the Board's agreement" to amend the May 23, 2006 order or the discussions concerning harmless error. Therefore, we cannot determine that the judge's refusal to remand prejudiced Dr. Abofreka.

> [The Supreme Court has] many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of. If the appellant fails to do this, the judgment will be affirmed.

Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961) (citations omitted).  See also

Riddick v. Commonwealth, 135 Va. 724, 726, 115 S.E. 523, 524 (1923).  "When a party seeks to

have an issue decided in her favor on appeal, [that party] is charged with the responsibility of

presenting an adequate record from which the appellate court can determine the merits of her

argument."  Pettus v. Gottfried, 269 Va. 69, 81, 606 S.E.2d 819, 827 (2004) (citations omitted).

V.

In conclusion, we hold the conclusions of law reached by the Board were supported by

findings of fact, which the Board expressly made on the record, and by substantial evidence.

We, therefore, affirm the trial judge's order affirming the Board's suspension of Dr. Abofreka's

medical license.

Affirmed.